UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ANDRES M. LANDOR                  *CIVIL NO. 6:14-2620

VERSUS                               *JUDGE DOHERTY

LAFAYETTE CONSOLIDATED GOVERNMENT  *MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation are the defendant's Motions to Dismiss Pursuant to FRCP Rule 12(b)(6). [rec. docs. 7, 16 and 22]. The plaintiff, Andres M. Landor ("Landor"), has filed Opposition. [rec. docs. 12, 28]. By these Motions, the defendant, the Lafayette City-Parish Consolidated Government ("LCG") seeks dismissal of Landor's Title VII lawsuit based on *res judicata* and, alternatively, for failure to state a claim under Rule 12(b)(6), FRCP.

For those reasons set out below, it is recommended that the Motions to Dismiss be **granted** and, accordingly, that this lawsuit be **dismissed**.

## BACKGROUND

On September 28, 2013, Landor, an officer with the Lafayette City Police Department ("LPD"), and his wife filed a lawsuit in this Court pursuant to Title VI (42 U.S.C. § 2000d, *et seq*.) and 42 U.S.C. §§ 1981, 1983 and 1985 against various defendants including Teurlings Catholic High School, Inc. ("Teurlings"), Principal Michael Boyer ("Boyer"), Vice-Principal Robert Baudier ("Baudier"), faculty sponsor of Teurlings' JV cheer squad Tiffany Dugas ("Dugas"), Detective Stephen Bajat ("Bajat") and the Lafayette City-Parish Consolidated

Government ("LCG")[1], arising out of an alleged cyberbulling episode utilizing a fake instagram account, involving their daughter, a black student and cheerleader at Teurlings, Docket No. 6:13-cv-2759, rec. doc. 1 (W.D. La.) (*"Landor I"*). In this Complaint, Landor and his wife alleged that Bajat had conspired with Teurlings and its agents and administrators to racially discriminate against their daughter by impeding and eventually terminating the investigation of alleged cyberbullying by a white parent and her daughter, a student at Teurlings, to protect them from criminal prosecution.

On January 8, 2014, Landor and his wife filed a Supplemental Complaint.[2] In the Supplemented Complaint, plaintiffs asserted that Bajat had filed a complaint with LPD Internal Affairs ("IA") against Landor alleging that he engaged in unprofessional conduct, to wit, making false statements about Bajat in the case. They further alleged that Landor was to be subjected to questioning by internal affairs in connection with the investigation of Bajat's complaint. [rec. doc. 44].

On January 5, 2014, Landor and his wife filed a First Amended Complaint in which they made additional allegations detailing how Bajat allegedly acted in concert with Teurlings and its administrators to commit intentional racial discrimination. [rec. doc. 30].

---

[1]LCG was substituted for the Lafayette City Police Department in an Amended Complaint filed on January 5, 2014. [rec. doc. 30].

[2]The Complaint was proffered for filing on December 12, 2013; leave for filing was granted on January 8, 2014. [rec. docs. 16 and 42].

On March 13, 2014, Landor and his wife sought leave to file a Second Supplemented Complaint alleging claims against Landor's employer, the LPD through LCG, and Chief of Police Craft pursuant to 42 U.S.C. §§ 1983 and 1985 and *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). [rec. doc. 48]. Following a March 18, 2014 hearing on the Motion before the undersigned, leave was granted. During the hearing, the Landors' counsel, the same counsel who filed the instant Complaint, did not mention Landor's pending EEOC charge and did not request a stay of the proceedings pending administrative exhaustion. Accordingly, because of the numerous previously filed Supplemental and Amending Complaints, the undersigned ordered that no additional amendments by the plaintiff would be allowed so that a Ruling on the pending Motions to Dismiss could be issued. [rec. doc. 57].

In the Second Supplemented Complaint, Landor alleged, among other things, that on February 21, 2014, he and two other officers, one of whom was white, were transferred from Metro, a unit that specializes in investigations (undercover and informant), to Patrol, a unit that responds to service/dispatch calls, pursuant to a new policy which limited an officers' time in Metro to six years. Landor alleged that his transfer from Metro to Patrol constituted a *de facto* adverse employment decision in retaliation for Landor's filing suit against Bajat and LCG, because Landor was black or because Landor was not allegedly aligned with Chief Craft. He therefore asserted claims under the First and Fourteenth Amendments alleging retaliation for protected speech – the allegations in his lawsuit publicly disclosing alleged police misconduct and racial discrimination, and substantive due process, procedural due process and equal

protection violations. [rec. doc. 58].

      In support of his equal protection racial discrimination claims, Landor alleged that Craft applied the new six year term policy to both black and a white officer, in an attempt to cloak the policy with an appearance of neutrality, as a pretext for his retaliatory animus. [rec, doc. 58, ¶¶ 76, 77]. Landor's transfer pursuant to the new six year term policy was alleged to have constituted an adverse employment action because although Landor's pay did not decrease, his perceived status within the LPD had been reduced, given that patrol is entry-level basic duty requiring no specialized training and Metro was a specialized unit, wherein officers were given a yearly plain clothes allowance, given a Metro badge and drove unmarked vehicles. [*Id*. at ¶¶ 83, 58-59, 63-64].

      Landor alleged that the policy was implemented by Chief Craft because although a pre-disciplinary hearing was held on February 12, 2014 on Bajat's complaint against him, Chief Craft could not render a final disciplinary decision as planned on February 20, 2014 because he had been advised by counsel that such action would be premature until the lawsuit had been concluded. [*Id.* at ¶¶ 38, 27, 28, 47, 48, 65, 66].

      Landor also alleged that Craft investigated alleged black officer misconduct differently than allegations against their white counterparts, thereby subjecting black officers to disparate adverse employment action. He further alleged that although Craft was aware of the filing of Landor's lawsuit, he failed to investigate the alleged misconduct of Bajat, a white officer. [*Id*. at ¶¶ 72, 73, 89-91, 94-95].

With respect to his First Amendment retaliation claim, Landor alleged that the new six year term policy was engineered by Chief Craft to subject him to a *de facto* adverse disciplinary action for his having filed suit against Bajat and LCG which publicly disclosed Bajat's racially motivated misconduct in connection with the investigation of the cyberbullying case. [*Id.* at ¶¶ 96, 97,100].

The defendants' moved to dismiss all of the plaintiffs' claims. After a May 27, 2014 hearing, at which there was no mention of Landor's pending EEOC claim nor any request by plaintiffs' counsel for a stay of the proceedings, a Report and Recommendation was issued by the undersigned. Objections by the Landors were filed on July 31, 2014 and August 5, 2014. Judge Doherty dismissed all of Landors' federal claims with prejudice on September 17, 2014, after assigning additional reasons. [rec. docs. 66, 67, 68, 72, 76 and 79]. The Landors have appealed this dismissal to the United States Fifth Circuit Court of Appeals.

On September 1, 2014, Landor filed the instant action ("*Landor II*"), against LCG. This lawsuit alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. [rec. doc. 1]. In response, LCG filed a Motion to Dismiss. [rec. doc. 7]. Landor then filed a First Amended Complaint, to which LCG filed another Motion to Dismiss. [rec. docs. 15 and 16]. Thereafter, Landor filed a Second Amended Complaint, in which he did not adopt, re-allege or re-aver the allegations in his prior Complaints, to which LCG filed another Motion to Dismiss. [rec. docs. 25 and 22].

In his Second Amended Complaint Landor alleges that he filed his initial EEOC charge against LCG on February 7, 2014 alleging that he was subjected to harassment and

discrimination in retaliation for filing *Landor I* which included race discrimination claims. [rec. doc. 25, ¶ 25]. Landor filed an amended charge on March 26, 2014 alleging disparate treatment based on race because Chief Craft did not investigate or discipline Bajat, who is white, after being served with *Landor I* and receiving Landor's initial EEOC charge, and that he was subjected to a *de facto* adverse employment decision, namely, a transfer from Metro to Patrol in accordance with the new six year term policy, in retaliation for filing *Landor I* and his initial EEOC charge. [*Id*. at ¶ ¶ 14, 48-53]. Landor therefore makes claims under Title VII for disparate treatment based on race [*Id*. at ¶ ¶ 54-57] and retaliation [*Id*. at ¶ ¶ 58-61]. Landor's right to sue letter was dated June 4, 2014; this lawsuit was filed September 1, 2014. [*Id*. at ¶ 1].

By the instant Motions, pursuant to Fed. R. Civ. P. 12(b)(6), LCG moves to dismiss all of Landor's claims on the basis that the claims are barred by *res judicata*, because they should have been brought in *Landor I,* and, alternatively, for failure to state a claim for which relief may be granted.

Taking judicial notice of this Court's own records in *Landor I*, for the reasons which follow, the undersigned recommends that the motions to dismiss be granted.

### Rule 12(b)(6) Motion to Dismiss Standard

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); F.R.C.P. 12(b)(6). Moreover, in deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. *Cinel v. Connick*, 15 F.3d 1338, 1343 fn.6 (5th Cir. 1994); *Funk v. Stryker Corp*.,

6

631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts . . . which were matters of public record directly relevant to the issue at hand.").³ Thus, while *res judicata* is generally an affirmative defense to be pleaded in a defendant's answer, the Fifth Circuit has held that "[w]hen all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of *res judicata*] may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Meyers v. Textron, Inc.,* 540 Fed. Appx. 408, 410 (5th Cir. 2013) *quoting Clifton v. Warnaco, Inc.*, 53 F.3d 1280, 1995 WL 295863, at *6 fn. 13 (5th Cir. 1995) (*per curiam*) (unpublished).

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) *quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).

In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming,* 281 F.3d at 161-162 *quoting Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992). Generally, this Court "must assess whether the complaint contains

---

³In this case, all of the documents considered by this Court are matters of public record. Accordingly, the instant Motion has not been converted to a Motion for Summary Judgment.

7

sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 257 (5th Cir. 2014) *quoting Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014).

Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555; *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013). Stated differently, "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombley,* 127 S.Ct. at 1965 *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.2004); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 at fn. 27 (5th Cir. 2009). If a plaintiff fails to allege facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombley,* 127 S.Ct. at 1974; *Malik v. Continental Airlines, Inc.*, 305 Fed. Appx. 165, 167 (5th Cir. 2008); *Mitchell v. Johnson*, 2008 WL 3244283, *2 (5th Cir. 2008).

## LAW AND ANALYSIS

### *Res Judicata*

The doctrine of *res judicata*, or claim preclusion, forecloses relitigation of claims that were, or could have been, raised in a prior action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312-313 (5th Cir. 2004) *citing Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Four elements must be met for a claim to be barred by *res judicata*:

 (1) the parties in both the prior suit and current suit must be identical;

 (2) a court of competent jurisdiction must have rendered the prior judgment;

 (3) the prior judgment must have been final and on the merits; and

 (4) the plaintiff must raise the same cause of action in both suits.

*Id*. at 313.

 The first three factors of the *res judicata* analysis are not disputed.[4]  Only the fourth factor – whether the causes of action are the same in both suits –  is at issue.

 To determine whether the prior and current suits involve the same cause of action, the Court applies a "transactional" test.  *Davis,* 383 F.3d at 313.  "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Id. quoting Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004) *quoting* the *Restatement (Second) of Judgments* § 24(1) (1982).  "What grouping of facts constitutes a 'transaction' or a 'series of transactions' must 'be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Davis,* 383 F.3d at 313 *quoting Petro-Hunt quoting Restatement (Second) of Judgments* § 24(2) (1982).

---

[4] The undersigned notes that *Landor I* remains on appeal.  However, *res Judicata* attaches even though an appeal has been taken and remains undecided.  *See Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (and cases cited therein).

9

The critical issue under the transactional test is whether the two actions are based on the "same nucleus of operative facts." *Id. quoting Petro-Hunt* at 396 *quoting In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). Accordingly, "the critical issue is not the relief requested or the theory asserted but whether [the] plaintiff bases the two actions on the same nucleus of operative facts". *Matter of Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990). "A party may not avoid the preclusive affect of *res judicata* by asserting a new theory or a different remedy. The nucleus of facts defines the claim rather than the legal theory posed or recovery sought." *Id.* at fn. 10 *citing Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1124–25 (5th Cir. 1987). Thus, this Court must review the facts contained in each complaint to determine whether they are part of the same transaction or series of transactions, which arise from the same nucleus of operative facts.

In *Landor I*, the plaintiffs accused Bajat, LCG and Chief Craft of discrimination and retaliation based on alleged conduct that occurred in connection with the handling of the cyberbullying investigation by Bajat, which resulted in the filing of *Landor I*, an internal affairs investigation against Landor, but not Bajat, which was allegedly motivated by race discrimination, a pre-disciplinary hearing which did not result in formal disciplinary action against Landor because of prematurity and Landor's subsequent transfer from Metro to patrol pursuant to the new allegedly racially motivated six year term policy engineered and promulgated by Chief Craft to punish Landor for publically exposing officer misconduct and racial discrimination within the LPD.

Under the transactional test, it is clear that both *Landor I* and *Landor II* are based on the same nucleus of operative facts. The claims in each are based on a series of connected transactions based on facts which are related in time, space, origin, and alleged motivation. Indeed, the underlying factual allegations made in *Landor I* are virtually identical to those made in *Landor II*.[5] All of the claims in question originate from the same continuing course of allegedly discriminatory and retaliatory conduct by Bajat, LCG and Chief Craft, culminating in an alleged adverse employment action – Landor's transfer from Metro to patrol pursuant to the new six year term policy. Additionally, both lawsuits cite the same motivation for the alleged discrimination – racial bias in the LPD and more specifically, racial bias on the part of Bajat and Chief Craft, and racially motivated retaliation by Chief Craft.

However, this does not end the Court's inquiry, even if the two actions are the same under the transactional test, *res judicata* does not bar the instant action unless Landor "could and should have brought [his Title VII] claims the former proceeding." *Howe*, 913 F.2d at 1145. Landor makes two interrelated arguments in this regard. First, Landor argues that his Title VII claims could not have been brought in *Landor I* because he did not receive his EEOC right-to-sue letter on the underlying allegations until June 4, 2014.[6] He further asserts that this

---

[5] These allegations include allegations regarding the filing of suit by Landor against Bajat and the LCG (although that claim is far from precisely pled), Bajat's complaint against Landor resulting in an internal affairs investigation and pre-disciplinary hearing, counsel's advice to Chief Craft regarding the prematurity of rendering a formal disciplinary action against Landor and the implementation of the six year term limit policy resulting in Landor's transfer from Metro to patrol. [rec. doc. 25, ¶¶ 8, 9, 11, 12, 14, 18, 22, 26, 32, 34, 42, 43].

[6] A right-to-sue letter is a condition precedent to filing a Title VII claim. *See Davis*, 383 F.3d at 314-315 *citing Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982).

Court prohibited him from filing any further amendments to his pleadings by March 18, 2014 Order. For the reasons which follow, neither argument is persuasive.

The Fifth Circuit has held, under similar circumstances, that subsequently filed Title VII claims may be barred by *res judicata* even if, at the time of the earlier filed suit, the plaintiff has not received a right-to-sue letter. *Davis,* 383 F.3d at 315-316.

Relying primarily on the Second Circuit's decision in *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2nd Cir. 1992) as well as decisions of several other Circuits, the Fifth Circuit held that plaintiffs must take measures to avoid preclusion under *res judicata* while they pursue their Title VII remedies.[7] In so holding, the Fifth Circuit reasoned that "the language and policy of Title VII do not undercut the application of *res judicata*, and we see no reason militating against application of well-settled claim preclusion principles." *Id.* at 315 *quoting Woods*, 972 F.2d at 39.

---

[7] The Fifth Circuit noted "[s]everal other circuits have similarly held that Title VII claims were barred where plaintiffs failed to take measures to avoid preclusion under *res judicata* while they pursued the requisite Title VII remedies." *Davis,* 383 F.3d at 315. The Circuit cases cited by the Fifth Circuit are as follows: *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714–15 (9th Cir. 2001) (holding "that Title VII claims are not exempt from the doctrine of *res judicata* where plaintiffs have neither sought a stay from the district court for the purpose of pursuing Title VII administrative remedies nor attempted to amend their complaint to include their Title VII claims"); *Herrmann v. Cencom Cable Assocs., Inc.,* 999 F.2d 223, 225–26 (7th Cir. 1993) ("Parties to Title VII actions enjoy no immunity from *res judicata*[.]"); *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 63 (1st Cir. 2000) (Title VII claim subject to *res judicata* where plaintiff received right-to-sue letter during pendency of prior action); *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (ADA claim was not exempt from *res judicata* where plaintiff failed to obtain right-to-sue letter during pendency of previous litigation); *Churchill v. Star Enters.*, 183 F.3d 184, 193–94 (3rd Cir. 1999) (same) ; *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032–33 (6th Cir. 1998) (plaintiff's claims were barred by *res judicata* where she could have obtained a right-to-sue letter and perfected her claim during the two-year pendency of prior action). *Id.* at 315-316.

Accordingly, "a plaintiff who brings a Title VII action and files administrative claims with the EEOC must still comply 'with general rules governing federal litigation respecting other potentially viable claims.'" *Id*. at 316 *quoting Woods*, 972 F.2d at 39–40.  Therefore, because the claims in the second later-filed lawsuit arose from the same nucleus of operative fact as the claims in first lawsuit, the Fifth Circuit deemed the plaintiffs "on notice" to include those claims in the first lawsuit and, accordingly, mandated that they take appropriate action to prevent their claims from being precluded. *Id*. at 316. However, because the plaintiffs failed to take measures to avoid preclusion, and specifically, failed to simply request a stay of their lawsuit pending the outcome of the EEOC proceedings, and then join the Title VII claims once they received their right-to-sue letters, the Title VII claims in their second, later-filed suit were barred by *res judicata*. *Id*.   See also *Clifton v. Warnaco, Inc*., 53 F.3d 1280, 1995 WL 295863, at *6 fn. 15 (5th Cir. 1995) (*per curiam*) (unpublished) (affirming dismissal of Title VII claims asserted in a second lawsuit as barred by *res judicata*, rejecting the plaintiff's argument that the claims could not have been brought in the original lawsuit because a right-to-sue letter had not been issued until one month before summary judgment was granted, because, amongst other reasons, the plaintiff  "failed to notify the court of his receipt of a right to sue letter, and simply waited for a ruling on the pending summary judgment motions. . . " then after suffering an adverse judgment, "he sought to play another card. . . . one of the tactics that *res judicata* is designed to discourage."); *Murray v. General Services Administration*, 553 Fed. Appx. 362 (5th Cir. 2014) (applying *Davis* to hold a plaintiff's Title VII claims "barred by *res judicata* even

though she had not received a right-to-sue letter at the time she filed her [original] lawsuit."); *Steen v. Harvey*, 247 Fed.Appx. 511 (5th Cir. 2007) (same).

That is precisely the case herein. Landor received his right-to-sue letter over three months before judgment was entered in *Landor I*. Furthermore, while it is true that the undersigned ordered no additional amendments to the Complaint be made, that order was made in the absence of any knowledge of Landor's pending EEOC charge. Counsel for Landor had multiple opportunities to apprise the Court of Landor's pending EEOC charge, the potential need to amend Landor's Complaint to add Title VII claims and to request a stay of the proceedings pending administrative exhaustion and thereby preserve Landor's Title VII claims. Nevertheless, counsel remained silent during both the March 18, 2014 conference and the May 27, 2014 oral argument on the Motions to Dismiss. Indeed, had counsel informed the Court of the pendency of EEOC proceedings, the Court would never have entered the Order in the first instance.

Furthermore, plaintiff's counsel never informed the Court of the receipt of the June 4, 2014 right-to-sue letter, nor did she ever seek to vacate, or have the Court reconsider, the undersigned's March 18, 2014 Order so as to join Landor's properly exhausted Title VII claims before the issuance of the undersigned's July 14, 2014 Report and Recommendation. Furthermore, counsel never mentioned the right-to-sue letter in her June 4, 2014 or July 31, 2012 objections to Judge Doherty. Thus, there were options available to Landor to avoid preclusion and preserve Landor's Title VII claims; counsel, however, chose not to pursue any

of those available options or to take any measures whatsoever to avoid preclusion. Instead, counsel apparently opted to attempt a "second bite at the apple" or to "play another card." Under *Davis,* and well-settled *res judicata* principles, this is not permitted.[8] Accordingly, Landor's Title VII claims are barred by *res judicata*.

## CONCLUSION

For the foregoing reasons, it is recommended that the Motions to Dismiss [rec. docs. 7, 16 and 22] be **granted** and, accordingly, that this lawsuit be **dismissed**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

---

[8]The Tenth Circuit explained the principles underlying *res judicata* as follows:

> A plaintiff's obligation to bring all related claims together in the same action arises under the common law rule of claim preclusion prohibiting the splitting of actions. *See, e.g.*, Restatement (Second) of Judgments § 24. . . .  Critically, that doctrine requires a plaintiff to join all claims together that the plaintiff has against the defendant *whenever during the course of the litigation related claims mature* and are able to be maintained. Thus, even if an additional claim does not mature until well after the initial complaint has been filed, the plaintiff nevertheless must seek to amend the complaint to add additional claims as a compulsory claim when the additional claim can be brought.
>
> "One major function of claim preclusion[, then,] is to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the first suit." 18 Federal Practice and Procedure § 4408 (emphasis added). "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions out of which the action arose." Restatement (Second) of Judgments § 24(1) . . . . "The transaction is the basis of the litigative unit or entity which may not be split." Restatement (Second) of Judgments § 24(1) cmt. a.

*Stone v. Dept. of Aviation*, 453 F.3d 1271, 1278-1279 (10th Cir. 2006) (footnotes omitted).

recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed June 29, 2015, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE